IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MARCUS MOTE,** | § | **CIVIL ACTION NO.** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **DEBRA WALTHALL,** | § | |
| | § | |
| **Defendant.** | § | **JURY DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Marcus Mote ("MOTE") brings this action against Defendant Debra Walthall, in her individual and official capacities, ("WALTHALL") pursuant to 42 U.S.C. § 1983 for violating MOTE's constitutional right to free speech and association and other claims and would show this Court as follows:

### I. PARTIES

1. Plaintiff is a former police officer for the City of Corinth.

2. Defendant, Debra Walthall, is named individually and in her official capacity as Chief of Police for the City of Corinth, Texas, and may be served at 2003 South Corinth Street, Corinth, Texas 76210.

### II. JURISDICTION

4. Defendant has systemic and continuous contacts with the State of Texas and Denton County, Texas. Therefore, this Court has general jurisdiction over Defendant for all matter in which it is a party and specific jurisdiction over Defendant for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this action.

5. Federal-question jurisdiction is invoked in accordance with 28 U.S.C. § 1331 because this controversy arises under "the constitution, laws or treaties of the United States;"

specifically, the claims arise under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

### III. VENUE

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b).

### IV. FACTS

7. The City of Corinth hired MOTE as peace officer on December 14, 2009. MOTE joined the Texas Municipal Police Association ("TMPA"), a labor association of law enforcement personnel that represents more than 23,000 local, county, and state law enforcement officers across Texas. On February 11, 2015, MOTE led a meeting to organize a local affiliate group to be known as the Corinth Police Officers' Association ("CPOA"). MOTE gave WALTHALL prior notice of the meeting and his intention to coordinate the local affiliate. The meeting was attended by several police officers and Lieutenant Frank McElligott (who has since been promoted to Assistant Chief). The attending officers were discouraged by various means from forming the CPOA.

8. Following the meeting, on February 13, 2015, WALTHALL emailed Assistant Chief Greg Wilkerson, Lieutenant Carrie West, and Internal Affairs Lieutenant Jimmie Gregg an article regarding a management survey conducted by TMPA in Edinburg, Texas that was critical of the police department administration in that city. WALTHALL wrote:

> "Check the article on Edinburg PD. **This is exactly what TMPA will lead our guys to.** This is the same survey that they did years ago on Allen PD."

(emphasis added). WALTHALL had previously worked for the Allen Police Department when a TMPA management survey which was critical of police administration was provided to the Allen City Council. WALTHALL thereafter took action to intimidate MOTE and the other police officers in order to prevent the formation of the CPOA. Specifically, the other main proponent of the CPOA, Corporal Jason Foutch, was transferred from the criminal investigations division to a

deep-nights shift in patrol. On March 4, 2015, MOTE was given a performance file issue regarding the cleanliness of his assigned patrol unit.

9. In a letter dated March 23, 2015, from TMPA Staff Counsel Chad R. Hyde to WALTHALL, TMPA challenged WALTHALL's attempts to prevent the formation of the CPOA. Specifically, TMPA wrote:

> "It is my understanding that you have met individually with officers and questioned their reasons for joining an association. I further understand that officer were informed that they 'do not need an association.' Officers that are leading the efforts have also been subjected to unlawful intimidation and reprisal due to their association involvement, and in the case of one officer, coercive questioning about association business by one of your Sergeants."

WALTHALL denied that she was engaging in any illegal intimidation of the officers attempting to form the CPOA.

10. On June 9, 2015, MOTE the first Internal Affairs investigation against MOTE was started ("IA2015-001"). MOTE, who was currently assigned as a School Resource Officer ("SRO") at Lake Dallas High School, reviewed the licenses of non-students who were applying to attend prom. One of the non-students had a criminal record and he alerted school administrators. MOTE was immediately transferred to deep nights patrol. IA205-001 resulted in a Written Reprimand despite the fact that MOTE's actions had been a common practice by SROs who worked at the school. A pre-disciplinary hearing was set for July 30, 2015.

11. On the same day as the pre-disciplinary hearing, the second Internal Affairs investigation ("IA2015-002") was started against MOTE since the first IA only resulted in a Written Reprimand. MOTE, while on routine deep-nights patrol, had encountered two juveniles sitting in the grassy front yard of a local residence. The juveniles, as proven by their statements and the statement of the home owner, told MOTE that they lived at the residence. MOTE observed the juveniles go to the front door of the residence and be let inside by the homeowner. MOTE then

continued down the block when the homeowner called 911 and stated the juveniles had been drinking and did not live at the location. MOTE immediately returned to the residence and a supervisor came out to the location. The juveniles were issued citations. One juvenile was released to her parents. The other juvenile was transported to a local hospital where her parents picked her up.

12. Internal Affairs investigators obtained complaint letters and audio statements from the juveniles and the homeowners. These statements were not provided to MOTE until after he was terminated.

13. WALTHALL, by memo dated October 20, 2015, terminated MOTE. She did so despite the fact that these were the first two internal affairs investigations against MOTE. She did so despite the fact that she had given multiple written reprimands and suspensions to officers for similar policy infractions. She did so despite the fact that she had given a 120-hour suspension to a police officer who had gotten drunk at Rangers baseball game, physically assaulted Arlington Police Officers, and then was untruthful to Internal Affairs investigators. Nonetheless, MOTE was terminated.

## V. CAUSES OF ACTION

*Count 1: First Amendment Constitutional Claim*

14. MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 13 of this Complaint as if fully set forth here.

15. MOTE engaged in speech concerning a matter of public concern and the right to freely associate. Specifically, MOTE's protected speech consisted of advocating for and organizing a local affiliate association of TMPA. MOTE's speech and attempts to organize a local affiliate association of TMPA motivated WALTHALL's imposition of the adverse employment

actions. By engaging in retaliatory employment actions against MOTE, as a result of his having exercised his protected First Amendment right of speech and association, WALTHALL endeavored to prevent other TMPA members from freely associating with those groups. WALTHALL's actions sent a clear message that if any TMPA member were to publicly propose forming a local affiliate of TMPA, those members would also be subject to the same adverse employment actions which befell MOTE. WALTHALL's actions have had a chilling effect on the Department and on the association. Thus, WALTHALL, while acting under color of law, deprived MOTE of his right to free speech and association—guaranteed by the First Amendment to the United States Constitution—in violation of 42 U.S.C. § 1983.

16.     WALTHALL was a final policymaker and, therefore, the City officially adopted and promulgated the decision to inflict the aforementioned adverse employment actions. As a direct and proximate cause of WALTHALL's retaliatory actions, MOTE has suffered damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, physical suffering, attorneys' fees and other expenses.

*Count 2: Violation of TEX. GOV'T CODE § 614.021, et seq.*

17.     MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 16 of this Complaint as if fully set forth here.

18.     Section 614.023 of the Texas Government Code obligates WALTHALL to give a written and signed copy of any complaint to a law enforcement officer. The officer must receive his copy of the complaint within a reasonable time and <u>before</u> a city disciplines the officer. Specifically, Section 614.023(b) provides that "disciplinary action <u>may not</u> be taken against the officer . . . unless a copy of the signed complaint is given to the officer or employee." TEX. GOV'T CODE § 614.023(b) (emphasis added). "'May not' imposes a prohibition and is synonymous with

'shall not.'" TEX. GOV'T CODE § 311.016(5). The Fourteenth Court of Appeals, in *Turner v. Perry*, 278 S.W.3d 806 (Tex.App.—Houston [14th Dist.] 2009, pet. filed), held that TEX. GOV'T CODE §§ 614.021–614.023 create a constitutional property right: "in the absence of complaints that were signed, <u>delivered</u>, investigated, and supported by evidence, [the law enforcement officer] had a legitimate expectation of continued employment secured by sections 614.021–023 of the Texas Government Code." (emphasis added). Here, WALTHALL never delivered the signed, written complaint from the juveniles and the homeowners to MOTE until after MOTE's termination. WALTHALL took disciplinary action against MOTE without complying with these statutory prerequisites. Therefore, WALTHALL's actions in firing MOTE violated chapter 614 of the Texas Government Code.

19.  As a direct and proximate cause of WALTHALL's actions, MOTE has suffered damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, physical suffering, attorneys' fees and other expenses.

*Count 3: Procedural Due Process Violation*
*42 U.S.C. § 1983*

20.  MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 19 of this Complaint as if fully set forth here.

21.  MOTE was entitled to both pre-termination and post-termination procedural due process. The pre-termination procedural due process rights have been created by Section 614.021–.023 of the Texas Government Code. Section 614.023 of the Texas Government Code obligates WALTHALL to give a written and signed copy of any complaint to a law enforcement officer. The officer must receive his copy of the complaint within a reasonable time and <u>before</u> a city disciplines the officer. Specifically, Section 614.023(b) provides that "disciplinary action <u>may not</u> be taken against the officer . . . unless a copy of the signed complaint is given to the officer or

employee." TEX. GOV'T CODE § 614.023(b) (emphasis added). "'May not' imposes a prohibition and is synonymous with 'shall not.'" TEX. GOV'T CODE § 311.016(5). The Fourteenth Court of Appeals, in *Turner v. Perry*, 278 S.W.3d 806 (Tex.App.—Houston [14th Dist.] 2009, pet. filed), held that TEX. GOV'T CODE §§ 614.021–614.023 create a constitutional property right: "in the absence of complaints that were signed, <u>delivered</u>, investigated, and supported by evidence, [the law enforcement officer] had a legitimate expectation of continued employment secured by sections 614.021–023 of the Texas Government Code." (emphasis added). Here, WALTHALL never delivered the signed, written complaint from the juveniles and the homeowners to MOTE until after MOTE's termination. WALTHALL took disciplinary action against MOTE without complying with these statutory prerequisites. Therefore, WALTHALL's actions in firing MOTE violated MOTE's procedural due process rights guaranteed by the Constitution.

22.     As a direct and proximate cause of WALTHALL's actions, MOTE has suffered damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, physical suffering, attorneys' fees and other expenses.

*Count 4: Equal Protection*

23.     MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 22 of this Complaint as if fully set forth here.

24.     WALTHALL has denied MOTE equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. This claim arises both directly under 42 U.S.C. § 1983 and under the United States Constitution. As a direct and proximate cause of WALTHALL's actions, MOTE has suffered damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, physical suffering, attorneys' fees and other expenses.

*Count 5: Violation of TEX. LABOR CODE § 101.301*

25. MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 24 of this Complaint as if fully set forth here.

26. Under section 101.301 of the Texas Labor Code, a person's right to work cannot be denied or abridged because of membership in a labor organization. Furthermore, a person shall be free from threats, force, intimidation, or coercion. WALTHALL, upon learning of MOTE's intention to start the CPOA, began to threaten, force, intimidate and coerce MOTE and the other police officers under her supervision from forming the CPOA. As a direct and proximate cause of WALTHALL's actions, MOTE has suffered damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, physical suffering, attorneys' fees and other expenses.

27. WALTHALL is, therefore, liable to MOTE for all the resulting damage MOTE suffered from WALTHALL's actions, including his termination and the resulting damages.

## VI. DEMAND FOR JUDGMENT

28. MOTE repeats and incorporates herein by reference the allegations in paragraphs 1 through 27 of this Complaint as if fully set forth here and in accordance with Rule 8 of the Federal Rules of Civil Procedure, make the following demand that judgment be issued in his favor on all his claims and respectfully request that this Court:

    (a) Issue a declaratory judgment that WALTHALL unlawfully deprived MOTE of his right to free speech—as guaranteed by the First Amendment to the United States Constitution—in violation of 42 U.S.C. §1983;

    (b) Issue a declaratory judgment that WALTHALL unlawfully deprived MOTE of his right of free association—as guaranteed by the First Amendment to the United States Constitution—in violation of 42 U.S.C. §1983;

(c) Issue a declaratory judgment that WALTHALL unlawfully deprived MOTE of his right to equal protection—as guaranteed by the Fourteenth Amendment to the United States Constitution—in violation of 42 U.S.C. §1983;

(d) Issue a declaratory judgment that WALTHALL unlawfully deprived MOTE of his right to procedural due process—as guaranteed by the Fourteenth Amendment to the United States Constitution—in violation of 42 U.S.C. §1983;

(e) Issue a declaratory judgment that WALTHALL violated section 614.021–.023 of the Texas Government Code in terminating MOTE;

(f) Issue a declaratory judgment that WALTHALL violated section 101.301 of the Texas Labor Code in her treatment of MOTE;

(g) Permanently enjoin WALTHALL, her agents, and those acting in concert with her: (1) from maintaining an unconstitutional political patronage system in government employment policy whereby freedom of political beliefs, association, or affiliation is infringed; (2) requiring WALTHALL to abide by the equal-opportunity employment policy adopted by the citizens of Corinth, Texas; (3) requiring WALTHALL to reinstate MOTE to his prior assignment; (4) requiring WALTHALL to pay MOTE back pay from the date of his termination to the date of his reinstatement; and (4) requiring WALTHALL to eliminate the effects of her discriminatory employment practices.

(h) Order WALTHALL to reinstate MOTE to his prior assignment;

(i) Enter an affirmative injunction requiring WALTHALL to reinstate MOTE to his prior position with the Corinth Police Department.

(j) Issue a monetary judgment in an amount sufficient to compensate MOTE for all damages suffered as a result of WALTHALL's violations of law as described herein, including damage to his reputation, lost back pay, front pay, real and probable injury to his person, extreme mental anguish, and physical suffering;

(k) Issue judgment for punitive damages in an amount sufficient to punish WALTHALL, in her individual capacity, for violating MOTE's constitutional rights guaranteed by the First Amendment to the United States Constitution, and to deter her from engaging in such action in the future;

(l) To the greatest extent allowed by law, issue a monetary judgment granting MOTE pre-judgment and post-judgment interest on all amounts to which he is entitled;

(m) Award MOTE attorneys' fees and costs; and

(n) Such other and further relief, legal and equitable, as may be warranted.

## VII. JURY DEMAND

29. MOTE demands a jury trial.

## VIII. PRAYER

30. For these reasons, MOTE requests that WALTHALL be cited to appear and answer this cause, and that upon hearing or trial of this action, that the Court enter judgment in MOTE's favor as against the WALTHALL and awarding MOTE all relief, both in equity and at law, special and general, to which MOTE may show himself justly entitled.

Respectfully submitted,

/s/Christopher D. Livingston
**CHRISTOPHER D. LIVINGSTON**
State Bar No. 24007559

**LYON, GORSKY, GILBERT & LIVINGSTON, LLP**
CBS Tower
12001 North Central Expressway, Suite 650
Dallas, Texas 75243
214-965-0090 / 214-965-0097 (Fax)

**ATTORNEYS FOR PLAINTIFF**